UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KARLA K. CREAMER**,

Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

Defendant.

Case Number 1:14 CV 1789

Judge Solomon Oliver, Jr.

REPORT AND RECOMMENDATION

Magistrate Judge James R. Knepp II

## INTRODUCTION

Plaintiff Karla Creamer filed a Complaint against Defendant Commissioner of Social Security's decision to deny disability insurance benefits ("DIB"). (Doc. 4). The district court has jurisdiction under 42 U.S.C. §405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated August 15, 2014). For the reasons stated below, the undersigned recommends the Commissioner's decision be reversed and remanded for further consideration of the treating physician rule.

## PROCEDURAL BACKGROUND

On December 23, 2011, Plaintiff filed for DIB alleging disability since September 14, 2011. (Tr. 147). Plaintiff's claims were denied initially (Tr. 75-79) and on reconsideration (Tr. 81-83). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 86-87). On April 19, 2013, Plaintiff (through counsel) and a vocational expert ("VE") testified at a hearing after which the ALJ found Plaintiff not disabled. (Tr. 5-20; 21-56). On June 21, 2014, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final

decision of the Commissioner. (Tr. 1-3); 20 C.F.R. §§ 416.1455, 416.1481. On March 21, 2014, Plaintiff filed the instant case. (Doc. 4).

## FACTUAL BACKGROUND

***Personal and Vocational Background***

Born September 24, 1984, Plaintiff was 28 years old at the time of the hearing before the ALJ. (Tr. 25). Plaintiff lived with her parents, had a driver's license, and testified that she drove when she could including driving herself to the hearing, although she had to stop and get out during the hour-long drive. (Tr. 26-27, 35). Plaintiff completed the majority of her junior year of college and had past relevant work experience as a customer service representative, package handler, inventory control manager, fork lift operator, and cherry picker. (Tr. 27, 49-50). Plaintiff alleged she had been disabled and unable to work since September 14, 2011. (Tr. 147).

In terms of daily activities, Plaintiff testified her medication made her groggy and so she typically took a ten to fifteen minute nap during the day. (Tr. 34). She felt she could lift five to ten pounds and had to carry her laundry in small loads or receive assistance. (Tr. 34). Plaintiff said she was able to cook, grocery shop, and dust as long as she did not have to lift anything very heavy, reach very high, or bend down. (Tr. 35). Due to pain, Plaintiff testified that she could not use the lawn mower or vacuum because she had to push them. (Tr. 35). She could shower and dress herself, although she struggled with certain tasks like putting on her left shoe and sock. (Tr. 36). Plaintiff was able to use a computer and testified that she would sometimes go outside with her dogs or walk a couple times per day. (Tr. 36, 39).

***Medical Background***

Plaintiff underwent a laminectomy, decompression, and discectomy at L4-L5 on May 26, 2010. (Tr. 261). She successfully completed aqua therapy and tried Lyrica but continued to

complain of left leg pain more than low back pain. (Tr. 261). She said the pain radiated down the back of her left thigh and calf. (Tr. 261). Still, Plaintiff indicated she was better now than pre-operatively. (Tr. 261). On examination on September 21, 2010, with Nathan Mickelson, D.O., Plaintiff had a well healed incision but still had a positive straight leg raise on the left-side with a strong toe and heel walk. (Tr. 261). She had 5/5 strength in her bilateral hip flexion, knee extension, ankle plantar fascia, and dorsiflexion. (Tr. 261). Dr. Mickelson discussed epidural steroid injections with Plaintiff, which she decided to try, and authorized her return to work with partial light duty—no lifting over ten pounds and no bending or twisting. (Tr. 261).

Plaintiff returned in October 2010 and saw Paul Degenova, D.O., to whom she reported that the steroid injections had not helped and had instead made her pain much worse. (Tr. 260). On examination, Plaintiff had a strong heel and toe walk and had a positive straight leg test on the left with negative FABER testing. (Tr. 260). Plaintiff's motor function and sensation were in-tact. (Tr. 260). Plaintiff returned again in late October 2010, to see Dr. Degenova, where he reviewed her new MRI scan and found she had no significant stenosis or recurrent herniation in the L4-5 but that she did have a formal bulge that was not neurocompressive. (Tr. 259). She also had some degenerative disc disease at the L3-L4 and L5-S1 and she appeared to have a tear at the L5-S1. (Tr. 259). Dr. Degenova allowed Plaintiff to continue working and continued her injections. (Tr. 259).

On March 21, 2011, Robert Perkins, M.D., completed a form for Plaintiff's private disability insurance where he opined she had been disabled and unable to work since March 17, 2011, but did not provide an RFC assessment. (Tr. 401-02). He gave her an estimated returned to work date of April 11, 2011. (Tr. 401).

Plaintiff had another surgery, this time a thoracic T10-T11 laminectomy with implantation of a permanent spinal cord stimulator electrode placed at the T8 level using Medtronic 5-6-5 electrode with subsequent implantation of internal pulse generator in the left gluteal region for pain relief. (Tr. 304). Plaintiff's post-operative diagnoses included lumbar post-laminectomy syndrome with lumbar disc degeneration, lumbar disc displacement causing chronic low back pain, and lumbar radiculopathy and neuropathy. (Tr. 304).

Plaintiff had a nerve stimulator repositioned by Ying Chen, D.O., on September 23, 2011. (Tr. 294). Plaintiff returned to Dr. Perkins on October 24, 2011, following this surgery. (Tr. 356). She continued to have a positive straight leg test on the left as well as tenderness at the incision site but she had normal muscle strength in her lower limbs. (Tr. 356). Dr. Perkins prescribed Percocet and tramadol and told her to stay off work at least through November 2011. (Tr. 356). Plaintiff's status was largely unchanged when she returned to Dr. Perkins on December 5, 2011. (Tr. 359). He noted that at her most recent job, she had only been able to work four to six hours due to pain. (Tr. 359). He recommended physical therapy, completing a functional capacity evaluation, and implementing a gradual return to work program. (Tr. 359).

Plaintiff participated in physical therapy until March 2012, when her physical therapist determined that although she had developed a greater tolerance to physical activity and took fewer breaks between exercises, she was no longer progressing. (Tr. 364). He recommended aquatic therapy until Plaintiff was ready to resume land-based therapy. (Tr. 364).

On August 13, 2012, Plaintiff again had a follow-up with Dr. Perkins. (Tr. 506). Plaintiff still had mild tenderness where the implant had been placed and walked with a slight antalgic gait. (Tr. 506). She again had a positive straight leg test on the left side only but had normal muscle strength. (Tr. 506). Dr. Perkins performed a functional capacity evaluation and

determined that Plaintiff was limited to sedentary type duty and would not be able to sit for more than one or two hours in an eight-hour workday. (Tr. 506). Dr. Perkins then opined Plaintiff "is disabled at this point." (Tr. 506).

On March 5, 2012, state agency physician, William Bolz, M.D., reviewed Plaintiff's medical record and determined Plaintiff was capable of a full range of light work but could only occasionally climb ladders, ropes, or scaffolds and must avoid even moderate exposure to hazards. (Tr. 61-63). Dr. Bolz further opined Plaintiff was only partially credible as evidence did not support Plaintiff's claim that she could only lift five pounds. (Tr. 61). On July 27, 2012, Dr. Thomas affirmed this assessment. (Tr. 70-72).

***ALJ Decision***

On April 25, 2013, the ALJ found Plaintiff had the severe impairment of Disorders of the Back. (Tr. 5, 10 ). The ALJ found that this impairment did not meet or equal a listed impairment. (Tr. 10). The ALJ then found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §404.1567(b) except that she was limited to no more than four hours of standing or walking in an eight hour workday, and could frequently but not constantly engage in pushing or pulling activity with her lower left extremity. (Tr. 11). Additionally, Plaintiff should never climb ladders, ropes, or scaffolds, and should only occasionally stoop, crawl, or climb ramps and stairs. (Tr. 11). Lastly, Plaintiff should avoid all exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights. (Tr. 11).

Next, the ALJ found, based on VE testimony that Plaintiff could perform her past relevant work. (Tr. 14). Therefore, she was not disabled.

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which

substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff asserts the ALJ erred by failing to follow the treating physician rule for two of Dr. Perkins's opinions. (Doc. 14, at 8-16). Plaintiff further asserts the ALJ erred in failing to properly assess her credibility. (Doc. 14, at 17-18). Each of these arguments shall be addressed in turn.

***Treating Physician Rule***

Plaintiff alleges the ALJ erred in failing to evaluate Dr. Perkins' August 2012 opinion at all. (Doc. 14, at 14-15). Additionally, she alleges the ALJ did not properly evaluate Dr. Perkins' December 2011 opinion. (Doc. 14, at 15-16).

Generally, the medical opinions of treating physicians are afforded greater deference

than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*.

Importantly, the ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id*. "Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (*quoting* SSR 96-2p, 1996 WL 374188, at *4). "Good reasons" are required even when the conclusion of the ALJ may be justified based on the record as a whole. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

<u>August 2012 Opinion</u>

In August 2012, Dr. Perkins performed a functional capacity evaluation on Plaintiff and opined she was "really limited to sedentary-type duty and even with that, at this point would not be able to sit for more than 1 or 2 hours in an 8-hour day. So she really is disabled at this point." (Tr. 506). The ALJ did not even mention this opinion in forming his RFC assessment. (Tr. 11-14). This was in error.

Defendant argues this error was harmless because opinions on a claimant's residual functional capacity or whether a claimant is disabled are not binding on the agency. (Doc. 16, at 8). While Defendant is correct that Dr. Perkins' statement that Plaintiff is disabled is not entitled to controlling weight, the same is not true for his opinion that Plaintiff could not sit for more than one or two hours in an eight hour workday. 20 C.F.R. § 404.1527(d). Defendant's claim that the ALJ is not required to give controlling weight to a treating physician's opinion about functional capacity—i.e. Dr. Perkins' opinion that Plaintiff could not sit for more than one to two hours in an eight hour workday is simply incorrect. An ALJ is required to give deference to a treating physician's opinion regarding a claimant's limitations if that opinion meets the standard set forth above. Thus, remand is required for proper consideration of Dr. Perkins' August 2012 opinion with regard to Plaintiff's functional capacity.

December 2011 Opinion

The ALJ analyzed Dr. Perkins' December 2011 and March 2011 opinions together as follows:

> Dr. Perkins initially opined that he claimant was unable to work (7F/1-2). He then concluded that the claimant could work only in four to six hour shifts due to pain (5F/24). The undersigned found that these opinions were not credible because they were inconsistent with the claimant's treatment records, as discussed above. Specifically, after spinal cord stimulator implantation, conservative treatment generally appeared to control her symptoms. Although she continued to report low back and left leg pain, doctors noted that the claimant was not compliant with treatment and did not appear to participate fully in physical therapy. In addition, Dr. Perkin s's opinions were inconsistent with the other opinions in the record, which the undersigned found credible for the below-stated reasons. Further, the undersigned noted that the determination of disability is an issue reserved for the Commissioner. Accordingly, the undersigned gave these opinions little weight.

(Tr. 12).

Plaintiff first points out that the ALJ offered no support from the record that Plaintiff was non-compliant or did not participate fully in physical therapy. (Doc. 14, at 15). Defendant has not indicated where support for this assertion can be found in the record and it is not clear from this Court's own review of the record that the ALJ's assertion that Plaintiff was non-compliant with treatment is accurate. (Doc. 16); (Tr. 364-390; 435-497). Further, the ALJ's assertion that Plaintiff's symptoms were well controlled by the spinal cord stimulator and conservative treatment is also not clearly supported with citations to the record. (Tr. 12). Therefore, the ALJ failed to provide good reasons for assigning Dr. Perkins' December 2011 opinion little weight.

***Credibility***

Lastly, Plaintiff argues the ALJ erred in analyzing her credibility by materially misrepresenting the medical record to the extent that the decision was no longer supported by substantial evidence. (Doc. 14, at 17-18).

An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms (especially pain) are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility, an ALJ considers certain factors:

> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;

> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [] pain or other symptoms;
>
> (vi) Any measures [the claimant] ha[s] used to relieve pain or other symptoms; and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

A claimant's subjective complaints can support a claim for disability, but there must also be objective medical evidence in the record of an underlying medical condition. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

The ALJ assessed Plaintiff's credibility as follows:

> The undersigned first noted that the claimant's generally conservative treatment record, as discussed above, did not support her allegations of significant and profound limitation. Specifically, conservative treatment generally appeared to control her symptoms after spinal cord stimulator implant surgery. In addition, the credible medical opinion evidence indicated that the claimant was capable of light work with some postural and environmental limitations. Further, the claimant's own statements and behavior discount her allegations of limitation. As discussed above, when the claimant's symptoms improved in late 2011, she did not return to work because her previous work was unavailable (SF/24). This suggested that although she was capable of working, the claimant simply did not seek out other employment. At the hearing, she testified that she could stand or walk for up to one hour at a time. She stated that at home she laundered clothing, cooked, shopped for groceries, drove a car, dusted, worked on her computer, visited friends twice a month, walked, read, and watched television. Even though she complained of ongoing back and leg pain, records indicated that she participated only marginally in physical therapy and that she has had no injections since spinal cord stimulator implantation. Despite her allegations, the record lacked any evidence that she was so significantly limited, which suggested that her limitations were not as severe as she reported. All of these factors discount her allegations of limitation and support the limitations identified in the residual functional capacity statement.

(Tr. 13).

Plaintiff argues the ALJ's assertion that Plaintiff was capable of working and simply did not seek out other work is false and ignores the fact that Dr. Perkins had advised Plaintiff not to work. (Doc. 14, at 18). As this case is being remanded for further consideration of Dr. Perkins' opinion in accordance with the treating physician rule, it is difficult for this Court to say that a credibility determination that does not fully consider this opinion is supported by substantial evidence. The Court does note that the ALJ appears to have adequately supported his determination with other evidence from the record including Plaintiff's ability to perform many household chores, visit friends, and spend time on the computer. (Tr. 13, 34-36). However, the Court declines to determine whether the ALJ's decision regarding Plaintiff's credibility is supported by substantial evidence at this time and instead remands for further consideration of the treating physician rule.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB is not supported by substantial evidence, and therefore recommends the decision be reversed and remanded to the

Commissioner in accordance with the above conclusions.

s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).